Filed 4/7/14  R.G. v. Superior Court CA5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| R.G.,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF MERCED COUNTY,<br><br>Respondent;<br><br>MERCED COUNTY HUMAN SERVICES AGENCY,<br><br>Real Party in Interest. | F068746<br><br>(Super. Ct. Nos. JP000660 & JP000860)<br><br>**O P I N I O N** |

## THE COURT\*

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  Brian L. McCabe, Judge.

R.G., in pro. per., for Petitioner.

No appearance for Respondent.

James N. Fincher, County Counsel, and Sheri L. Damon, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

\*      Before Gomes, Acting P.J., Poochigian, J., and Franson, J.

R.G. (mother) has two sons, 20-month-old K.B. and 8-month-old A.B., the subjects of this writ petition. At a contested hearing, the juvenile court denied mother's petition under Welfare and Institutions Code section 388[1] to return K.B. to her custody, denied her reunification services as to A.B. and set a section 366.26 hearing as to both children.

Mother, in propria persona, seeks an extraordinary writ directing the juvenile court to return the children to her custody and terminate its dependency jurisdiction or provide her reunification services. She believes the juvenile court's orders are based on her failure to participate in psychotherapy but contends she was ineligible for it at that time. She informs this court she is participating in psychotherapy and attached supporting documentation to her petition. We deny the petition.

## PROCEDURAL AND FACTUAL SUMMARY

In August 2012, the Merced County Human Services Agency (agency) took then two-month-old K.B. into protective custody because mother's home was dirty, she had untreated depression and was cutting herself and she left K.B. alone in the home on multiple occasions.

In March 2013, following a contested dispositional hearing, the juvenile court denied mother reunification services under section 361.5, subdivision (b)(2) after two psychologists concluded she had a mental disorder that prevented her from benefitting from reunification services. Both psychologists diagnosed her as having a borderline personality disorder. One of the psychologists diagnosed mother with major depression and characterized her mental disorder as "moderate to severe." The psychologist reported that mother engaged in risky behavior that endangered K.B. such as walking

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

with K.B. for long distances in the middle of the night in dangerous places not knowing where she was going and taking rides from and residing with strangers. The same psychologist opined mother was in need of "immediate psychological interventions to address her untreated, serious, mental health issues."

The juvenile court ordered reunification services for K.B.'s father and set the six-month review hearing for September 2013. K.B. was placed with his paternal grandparents. Mother did not appeal from the court's order denying her services.

In July 2013, mother gave birth to A.B. The agency took him into protective custody because of mother's untreated mental illness.

The maternal grandmother, Ro., testified at the detention hearing in July 2013 she planned to help mother take care of A.B. by babysitting. She said she lived very close to mother and could be at her home quickly if mother needed her. Ro. said she was a registered nurse and worked full time. However, she broke her ankle in early May and would not return to work until after September.

The juvenile court agreed not to detain A.B. if mother moved in with her sister, Sandra, and complied with a safety plan. The safety plan required mother to participate in services and remain in Sandra's home and Sandra and Ro. to babysit while mother participated in services. Ro., Sandra and mother agreed to and signed the safety plan.

In August 2013, the juvenile court ordered A.B. placed with mother under family maintenance services. The court set the six-month family maintenance review hearing for February 2014.

In September 2013, mother filed a petition under section 388 (section 388 petition) asking the juvenile court to place K.B. with her under a plan of family maintenance. The court set a hearing on the section 388 petition in September 2013 to be heard in conjunction with its six-month review of father's family reunification services as to K.B. (combined hearing).

3

The combined hearing was continued to the end of October 2013. Meanwhile, the agency removed A.B. from mother and filed a supplemental petition (§ 387) after mother left A.B. alone while waiting for Jonathan, a high school friend, to babysit. The home where A.B. was left was not Sandra's home. The agency placed A.B. with a relative.

Jonathan said he received a phone call from mother stating she left A.B. alone and needed someone to watch him. Between the phone call and the time it took Jonathan to walk to mother's residence, he estimated A.B. was unsupervised for about 20 minutes. Jonathan said mother needed him to babysit so she could pick up a drug and alcohol certificate. He walked to her home and found the door unlocked. A.B. was in a car seat alone in the living room. Jonathan said this was the second time mother called him to babysit after she had left A.B. alone. Approximately a week before, she sent him a text message asking him to babysit after she had already left for school. He said he was not able to babysit. Mother told him she checked on A.B. between classes.

Mother admitted leaving A.B. alone twice, but claimed it was for no more than five minutes each time. She first left him alone to go to school but came back five minutes later because she did not feel right leaving him alone. The second time she called Jonathan to pick her up because she wanted to get her graduation certificate for completing the alcohol and drug program. He called and said he was on his way so she fed and changed A.B. and he fell asleep. She left because it was already 2:30 p.m. She was a block away when she saw Jonathan on his way to her home.

The social worker asked mother if she had a history of mental illness. She said she was suffering from depression and was taking an antidepressant. She said the two psychological evaluations were incorrect and that she did not have a mental health diagnosis nor was she being treated for a mental illness.

Mother's therapist, Bret Green, said mother was a complex individual in need of major support. He said she did not live with Sandra and her family was mad at her

4

because she allowed a stranger into her parents' home. Ro. said mother continued to live with Sandra. Sandra said mother continued to live with her and she and Ro. provided her transportation and childcare. She said mother had only recently started allowing Jonathan to babysit A.B. She believed something must have happened between them to cause Jonathan to lie about A.B. being left alone. She did not understand why mother did not ask her or their mother to babysit.

In October 2013, the juvenile court vacated the family maintenance review hearing scheduled for February 2014.

The agency recommended the juvenile court deny mother's section 388 petition and not return K.B. to her custody. The agency also recommended the court deny her reunification services as to A.B. The agency opined mother and K.B. were not significantly bonded and mother's childlike and impulsive behavior placed the children at risk for future harm and neglect. The agency also recommended the juvenile court terminate father's reunification services as to K.B.

In January 2014, the juvenile court conducted a contested hearing on the agency's recommendations. Mother's position was the juvenile court should return K.B. and A.B. to her under family maintenance.

Ro. testified she knew mother was trying to find a babysitter for A.B. but had no idea mother was going to leave A.B. alone. She said she was willing to have K.B. and A.B. placed in her home and to help mother raise them, but would place them in daycare while she worked rather than leave them in mother's care.

Mother testified she visited K.B. once a month and A.B. weekly and the visits went well. She explained she left A.B. alone because she wanted to get her diploma at the drug and alcohol program. She was trying to be independent and get a babysitter by herself.

5

Mother further testified she completed substance abuse and domestic violence programs and a parenting class and attended Narcotics/Alcoholics Anonymous meetings. She was not taking medication or participating in psychotherapy but was in the process of applying for family counseling.

At the conclusion of the hearing, the juvenile court denied mother's section 388 petition as to K.B., sustained the supplemental petition as to A.B., denied mother reunification services as to him because of her mental disability (§ 361.5, subd. (b)(2)), terminated father's reunification services as to K.B., and set a section 366.26 hearing as to both children. This petition ensued.[2]

## DISCUSSION

Mother contends the juvenile court's orders resulting in the setting of the section 366.26 hearing must be vacated because they were premised on the faulty notion that she was resisting psychotherapy. She acknowledges she was not participating in therapy when the court ruled, but claims it was because therapy was not deemed medically necessary in her case, not because she was not pursuing it. Mother seeks to prove her contentions through various documents attached to her writ petition.

As a preliminary matter, we cannot review the documents related to mother's participation in therapy because they were not considered by the juvenile court either because they were not produced during the pendency of these proceedings or because they reflect events that occurred after the juvenile court's ruling in January 2014. (*In re Zeth S*. (2003) 31 Cal.4th 396, 405.) Further, even if we reviewed the documentation and credited mother's contentions with respect to what they reflect, we would find no error in the juvenile court's rulings.

---

[2]     Father did not file a writ petition.

6

The juvenile court made two rulings as to mother that resulted in the setting of the section 366.26 hearing as to K.B. and A.B. First, the court denied mother's section 388 petition to return K.B. to her custody. Section 388 allows the parent of a child adjudged a dependent of the juvenile court to petition the court to change, modify or set aside any order upon grounds of change of circumstance or new evidence. (§ 388, subd. (a)(1).) In order to prevail, the parent must show a change of circumstances has occurred or new evidence has been obtained and undoing the prior order would be in the best interest of the child. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 529.)

Here, the juvenile court denied mother reunification services as to K.B. because she suffered from a mental disability that prevented her from utilizing reunification services. Mother sought a new order returning K.B. to her care with family maintenance services. However, mother failed to show her mental condition had changed—i.e., that she no longer had a mental disability preventing her from utilizing services. Consequently, she did not meet her burden of showing changed circumstances under section 388 and the juvenile court properly denied her petition. Thus, evidence mother was seeking psychotherapy would not have altered the court's finding she suffered from a mental disability or constituted alternate grounds for changed circumstances under section 388. Under the circumstances, the juvenile court had no choice but to set a section 366.26 hearing as to K.B. once it terminated father's reunification services.

The other juvenile court ruling that advanced these proceedings to a section 366.26 hearing was its denial of reunification services to mother as to A.B. based on her mental disability. The court's decision was supported by its prior finding mother suffered from a mental disability that prevented her from utilizing services. Mother did not challenge the validity of the psychologists' opinions underlying the court's finding, appeal from its order denying her reunification services as to K.B., or offer new evidence refuting the psychologists' opinions. Therefore, she fails to show the juvenile court erred

7

in denying her reunification services as to A.B. and setting a section 366.26 hearing as to him.

We find no error on this record and deny the petition.

## DISPOSITION

The petition for extraordinary writ is denied. This opinion is final forthwith as to this court.